UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES MICHAEL AND SHELLY BELCHER as guardians and parents of M.B., a minor and TARYN SPIVEY as guardian and parent of J.A., a minor and JANICE AND JODY EVANS as guardians and parents of B.E., a minor<br><br>Plaintiffs,<br><br>v.<br><br>ROBERTSON COUNTY BOARD OF EDUCATION<br><br>Defendant. | No. 3:13-CV-00161<br>Judge Campbell |

## PROPOSED AMENDED COMPLAINT

Plaintiffs James Michael and Shelly Belcher as parents and guardians of M.B., a minor, and Taryn Spivey as parent and guardian of J.A., a minor, and Janice and Jody Evans as parents and guardians of B.E., a minor for their causes of action against the Defendant the Robertson County Board of Education, state as follows:

### PARTIES AND VENUE

1. Robertson County Schools are organized and existing under the laws of the State of Tennessee. The acts or omissions complained of herein were those of Robertson County Board of Education and the East Robertson Elementary School.

2. This action is brought pursuant to Title IX, codified as 20 U.S.C. § 1681(a), 42 U.S.C. § 1983 the Tennessee Governmental Tort Liability Act, T.C.A § 4-20-201 et seq. and

principles of Tennessee common law negligence. The acts, errors and omissions complained of herein arise from a series of related events.

3. Plaintiffs Michael and Shelly Belcher bring this action on behalf of their minor child, referred to herein as "M.B." Plaintiff Taryn Spivey brings this action on behalf of her minor child referred to herein as "J.A." Plaintiffs Janice and Jody Evans bring this action on behalf of their minor child, referred herein as "B.E."

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court further has supplemental jurisdiction over all other claims that are so related to the claims and the actions within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367(a). Venue is in this District pursuant to 28 U.S.C. § 1391(b).

5. The Defendant's policy and practice of repeated failure to report sexual assaults within their schools creates a constitutionally cognizable claim giving rise to liability under 42 U.S.C. § 1983. No effort was made to remove the assailant or to protect the injured children. Defendants failed to properly report the incidents to law enforcement and proper authorities as required by T.C. A. § 49-6-4301, § 37-1-403 and §37-1-605.

**ALLEGATIONS OF FACT**

6. The Robertson County Board of Education had actual knowledge of a significant danger of sexual molestation at East Robertson Elementary School at least in the fall of 2011. Despite actual knowledge, known perpetrators of sexual batteries have been left in the company of other children including among multiple victims. The county and its school system provide no training for their teachers and staff to deal with sexual contact among their pupils. They offer

no counseling specific to the needs of children who act out sexually or their victims whom they isolate, transfer and stigmatize.

## *M.B.*

7. M.B. was a pupil registered at East Robertson Elementary School in Robertson County, Tennessee in the fall of 2011. During the fall his mood and demeanor changed dramatically. He became tearful and no longer wanted to go to school. He reported that he was required to accompany his teacher, Ms. Hall, everywhere she went. Ms. Belcher met with Ms. Hall but received no explanation sufficient to explain M.B.'s abrupt change in behavior.

8. On April 18, 2012, Mrs. Belcher received a call from East Robertson Elementary Assistant Principal Kecia Young who said that there was no current "investigation" but that she needed her help as a parent. Ms. Young said it was a confidential matter and asked Mrs. Belcher to speak with M.B. and "ask him if anything inappropriate had happened at school." Ms. Young stated "She could not give Mrs. Belcher details until she had spoken with M.B." When Mrs. Belcher asked if she should pick M.B. up from school the reply was "no, it would disrupt his day." Mr. Belcher immediately called Ms. Renae Fehrman, the Principal, who would say only that Mr. and Mrs. Belcher must speak first with M.B. Mr. Belcher asked whether there were other children or an adult involved, Ms. Fehrman's replied that "children of all ages interact within our school." Later that evening Mrs. Belcher questioned M.B. He denied that anything inappropriate had happened at school.

9. April 19, 2012 Mrs. Belcher went to school to meet with the Ms. Fehrman she refused to provide further information.

10. Mrs. Belcher went from the school to the Board of Education and met with Human Resources Officer Terri Simmons. She also refused to inform Mrs. Belcher about the

sexual assaults, because "they had to protect the privacy of another child." The child they were "protecting" was the perpetrator, "M." Ms. Simmons told Mrs. Belcher that M.B. was safe at school and that there was nothing to be concerned about.

11. On April 22, 2012 Mrs. Belcher contacted the Robertson County Sheriffs Department and made a report.

12. Between April 23rd and May 3, 2012 the Belchers did not allow M.B. to return to East Robertson Elementary because they could not determine what had happened to him and were concerned for his safety. He was interviewed by DCS on May 2nd.

13. April 24, 2012 Mrs. Belcher received a call from a Detective at the Robertson County Sheriff's Department informing her that the school had not reported to the Department of Children's Services (DCS) any incident involving M.B.. Later that evening when Mrs. Belcher attempted to put M.B. to bed he began to cry and shake uncontrollably, saying that he did not want to go back to school.

14. April 25, 2012 his first words to his mother were that he did "not want to go to school ever…for the rest of the year." When questioned by Mrs. Belcher he continued to refuse to tell her why he did not want to return to school. Mr. Belcher contacted the school and requested M.B.'s schoolwork for the week and later that day picked it up. Again at bedtime M.B. began to cry and say that he did not want to go back to school and that he did not want to go on the playground.

15. On April 26 Mrs. Belcher learned from the Detective at the Sheriffs Department that a report was found at DCS that listed M.B.'s name. However, when the East Robertson Elementary principal was contacted she refused to cooperate with DCS. Mrs. Belcher also

4

Case 3:13-cv-00161   Document 22   Filed 05/02/13   Page 4 of 14 PageID #: 159

learned there was a third child involved in the incidents at the school. The Detective filed a report for the third child's family as well.

16. The Belcher's requested of the Board that M.B. be "homebound" for the remainder of the year. That request was denied by the Director of Schools, Mr. Dan Whitlow. Instead, defendants offered to transfer him for the last three weeks of school and threatened the parents that he was in danger of being truant.

17. Mrs. Belcher was contacted by DCS and a Detective from the Robertson County Sheriffs Department. An appointment was scheduled for M.B. and his parents with DCS for May 2. An interview was conducted at the Child Advocacy Center.

18. May 3, 2012 Truancy hearing was conducted. In response to this hearing the Belchers were required to provide a doctor's note covering the days M.B. had been absent from school, despite actual knowledge of her concerns. Afterwards the Belchers attended their older son's ballgame in Portland. Mrs. Belcher spoke to the parent of another boy in M.B.'s class. Mrs. Belcher asked them if they had made any trips to Springfield lately. The Belchers feared that the other child also had been sexually molested, confirming their worst fears.

19. On May 6th the Belchers met with the parents of the other child and determined that the common assailant was M.

20. On May 7th the Belchers learned from the Detective that a DCS report containing information now known to have originated at the Vanderbilt Pediatric Psychiatric Hospital with M.B.s name on it, containing only his first name. DCS had contacted East Robertson Elementary but persons there had refused to provide M.B.'s last name. Mrs. Belcher learned that M. had previously been admitted to the Vanderbilt Child Psychiatric Ward by his grandmother and had spent two weeks in inpatient care.

5

21. Later the same day, M.B. told his mother he had a "bad day" at school. He said, he had been sitting next to M. in computer class and had "gotten into trouble." The teacher had written a note on his folder that said "complete lack of self control." The Belchers contacted Ms. Hall that evening for additional details on the day's events. Mrs. Belcher asked Ms. Hall why M.B. goes with her every time she leaves the room and she responded, "it is for M.B.'s safety." When asked if other children also left the classroom she said, it was "confidential."

22. May 10, 2012 Mrs. Belcher drove M.B. to school. When they turned on East Robertson Road he became hysterical, and began crying and begging her not to take him to school. M.B. confessed that he thought he needed to "tell her something" but he could not stop crying long enough to do so. Mrs. Belcher returned home. Once home M.B. told his mother "M. had been touching M.B. on his private area. M. would come up behind me and grab me like a bear hug." M.B. used his own hands on his own body to show Mrs. Belcher where M. would put his hands directly on M.B.'s crotch. M.B. said sometimes M. will just grab me or sometimes he tries to touch me for a long time but I tell him to stop. M.B. said it is hard to get away because his arms are pinned to his sides. M.B. also said that sometimes M. puts his hands on his privates and does "this"- (M.B. began to thrust back and forth). M.B. told her that he told M. "it is not nice to do that". M.B. also said that sometimes M. does that (thrusting) behind me (on his bottom) or on my leg. Mrs. Belcher asked when the last time was this happened and M.B. said "yesterday" (May 9th).

23. M.B. said the abuse had begun when "it was cold and we wore our big coats". M.B. then began to cry and say that he was sorry. He begged not to return to school until the second grade.

24. Mr. and Mrs. Belcher dropped M.B. at his grandparents and after contacting the other family drove directly to East Robertson Elementary School. The other family was waiting for the Belchers when they arrived at the school. Ms. Fehrman left the parents in the office waiting for quite some time. When she finally came to the office she refused to meet with all the parents together due to " privacy issues." The Belchers then arranged for M.B. to take his final tests of the year the next morning accompanied by his father.

25. M.B. began individual and family therapy on June 18, 2012 and it continues through the filing of this Complaint.

26. The sexual abuse and harassment M.B. experienced was so severe and offensive and his emotional response to it so debilitating that M.B. could no longer remain at East Robertson. The child has been placed in a private school where he can feel safe.

### *J.A.*

27. In the spring of 2012 J.A. was a pupil in first grade at East Robertson Elementary School. One of his classmates was "W." a boy his age. J.A.'s previously happy demeanor abruptly changed in May. He became increasingly withdrawn and tearful. For the first time, he expressed a desire not to be forced to go to school. Mrs. Spivey was not informed of any problems regarding sexual abuse at the school.

28. J.A.'s emotional state improved over the summer. In the fall, however, J.A. was again placed in class with W. J.A. became increasingly distraught and fearful, again begging not to be forced to go to school.

29. In October, 2012, J.A. finally told his mother that W. was "humping his backpack" and that he would "hump his leg or foot." He related that he had told W. to stop but the behavior persisted.

30. On Friday, November 2, 2012, J.A. broke down. He tearfully disclosed to his mother that beginning in the end of the previous school year W. had repeatedly touched him in his private areas and had forced J.A.'s hand onto his genitals. J.A. reported that W. would pin his arms to his side in order to fondle his genitals. On occasion he would force J.A.'s head towards his genitals and make sexually suggestive noises. W. invited J.A. to what he called a "sex party" at his home.

31. J.A. said that he had reported the touching to his teacher. She separated them but did nothing else.

32. Mrs. Spivey notified the sheriff's department and the mother of W. of what she had learned. The Robertson County Sherriff's Department reported the occurrence to the Tennessee Department of Children Services (DCS).

33. Mrs. Spivey met with the principle, Ms. Fehrman and the teacher, Ms. Madsen. Neither of these persons offered to do anything aside from promising to keep the boys separated and place them in different zones, or "circles" on the playground. A practice that stigmatizes J.A. and does not protect him.

34. Because she was not satisfied that the school had the ability or the intention to protect her son, Mrs. Spivey kept J.A. out of school for the week of November 5 – 9, 2012.

35. On November 9, 2012, Mrs. Spivey and her husband met with Mr. Dan Whitlow, Director of Schools for Robertson County. Mr. Whitlow was dismissive. He asked for not details of the assaults. Astonishingly, he described the sexual assaults as mere "age appropriate behavior." He stated explicitly that he could not protect J.A. in any school and suggested moving the child to Robert Woodall Elementary.

8
Case 3:13-cv-00161  Document 22  Filed 05/02/13  Page 8 of 14 PageID #: 163

36. As a consequence, J.A. is now in a different school without the friends he had made at East Robertson. He has experienced a significant change in personality from that displayed by him prior to the series of sexual assaults. His grades have suffered, he is resistant of going to school, and he suffers from depression. He avoids group activities and is fearful. He is undergoing counseling for his condition on a weekly basis.

### *B.E.*

37. B.E. was a student registered at East Robertson Elementary school in Robertson County, Tennessee in September of 2012. One morning in late September B.E. became tearful and refused to go to school. B.E. liked school and had never behaved this way before. Ms. Evans allowed B.E. to stay home with her that day.

38. The following morning Ms. Evans forced B.E. to return to school in spite of her tears. Keica Young, Assistant Principal at East Robertson called Ms. Evans later that day. She advised Ms. Evans that B.E. had been in the principal's office because she (Ms. Young) had needed to question B.E. about an incident that allegedly happened two days before. Ms. Young assured Ms. Evans that she did not need to punish B.E. and that after talking with the other children "B.E. didn't do anything and she is not in trouble." When Ms. Evans questioned what had occurred Ms. Young said "it was confidential and that she could not discuss it with her."

39. When B.E. got home from school she became extremely upset when questioned about the incident. First she told her mother that the class had been in the computer lab sitting in a circle "Indian style." The teacher had left the room and "M. licked her arm and it was gross." When Ms. Evans continued to press she learned that in fact M. had forced his head into B.E.'s lap and began licking her vagina area. B.E. tried to escape from him but was unable to. Finally another boy pulled M. off of B.E. Her clothing was soaked with his saliva.

40. After the incident the computer teacher instructed the children not to talk about what had happened.

41. As soon as B.E. told her mother about the attack Ms. Evans tried unsuccessfully to reach Ms. Young. She called numerous times on the following day but to this day neither Ms. Young nor anyone else at East Robertson Elementary has contacted her or expressed the slightest concern about the child.

42. Ms. Evans contacted DCS and a Detective from the Robertson County Sheriffs Department to report the attack. No one at the school, including Ms. Young, reported this sexual assault by a known aggressor to DCS, as required by law.

43. The sexual assault and harassment B.E. experienced by her classmates were so severe and offensive and her emotional response to it so debilitating that B.E. could no longer remain at East Robertson. The child has been moved to another school where she can feel safe.

## CAUSES OF ACTION

### TITLE IX

37. Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Robertson County and the Robertson County Schools receive federal assistance.

38. M.B., J.A. and B.E. have been denied access to educational opportunities or benefits. The Defendant, Robertson County Board of Education had actual knowledge of inappropriate and harassing activity and was deliberately indifferent to the harassment.

39. The sexual assaults endured by M.B., J.A. and B.E. were sufficiently severe, pervasive, and objectively offensive that the children were deprived of access to the educational

opportunity and benefits provided by the school. The Defendant, Robertson County School Board was deliberately indifferent to the safety of M.B., J.A. and B.E.

40. As a direct and proximate consequence of their indifference M.B. has been forced to flee from Robertson County Schools. The Belchers have placed him in a private school in another county.

41. The Defendants are therefore liable under Title IX for all injuries sustained by M.B. proximately caused by its violation of law, including the cost of private school.

## GOVERNMENTAL TORT LIABILITY ACT

42. The principal of East Robertson Elementary School had actual knowledge of sexual assaults on M.B. as early as late November 2011 and failed to take action sufficient to protect all three children from further abuse. Employees of the Robertson County Board of Education knew of eminent threats of physical harm to M.B., J.A. and B.E. but failed to take any action to prevent it. Defendants are guilty of negligence and are liable for all injuries caused thereby pursuant to T.C.A. § 4-20-201 et seq.

43. Neither M.B.'s teacher; J.A.'s teacher, the computer teacher, Ms. Fehrman, the principal; or any other teacher; or any one at the Robertson County Board of Education properly reported the incidents to law enforcement and proper authorities as required by T.C.A. § 49-6-4301, § 37-1-403, and § 37-1-605.

44. The Defendant was deliberately indifferent to the sexual abuse of M.B., J.A. and B.E. and other children at East Robertson Elementary. When the school was finally contacted by DCS in response to a report of the abuse made by Vanderbilt Psychiatric Hospital, officials refused to respond.

45. The Defendant assumed a duty to protect M.B., J.A. and B.E. from harm and negligently failed to do so. Indeed the Robertson County Sheriff's Department sought to indict the Director of Schools, the Principal and others for crimes arising from their failure to report, as they had a duty to do and their failure to protect the children. The District Attorney refused to do so saying that his office wanted to "mend fences" and make peace with the School Board. Parents are left with no means to protect their children aside from litigation.

## DEPRPRIVATION OF RIGHTS PROTECTED BY THE CONSTITUTION

46. M.B., J.A. and B.E.'s constitutional rights were violated as a result of the Defendants failure to provide a safe environment in which they could attend school, having actual knowledge of the threats to their safety, including the identities of the perpetrators.

47. The Defendant was deliberately indifferent, and made a deliberate and conscious choice, to ignore an obvious danger that resulted in deprivation of M.B., J.A. and B.E.'s constitutional rights by:

(a) failure and refusal of the teachers to inform the parents of the assaults;

(b) indifference to repeated sexual assaults by M. and W. in the classroom and on the playground on more than one child;

(c) refusal of the Board of Educations to provide for the safety of children in the face of known danger;

(d) failure to report sexual assaults to DCS and or law enforcement;

(e) failure to adopt or implement policies and procedure to prevent sexual assaults from occurring;

(f) failure to remove M. and W. from the classroom and school.

48. Defendant created and had actual notice that their actions or failure to act were substantially certain to result in Constitutional deprivations, Defendant consciously and deliberately chose to disregard the risk of harm to M.B., J.A. and B.E.

49. As a direct result of the Defendants' failure to protect M.B., J.A. and B.E. from repeated sexual assaults, failure to notify his parents so that they could remove them from a dangerous environment, which the Defendants themselves had created, M.B., J.A. and B.E. suffered loss and harm and deprived them of their Constitutional rights, including, rights under the Due Process and Equal Protection Clauses of the 14th Amendment to the United States Constitution, for which a private right of action exists under 42 U.S.C.S. § 1983 et seq.

## FAILURE TO TRAIN

50. The defendant failed and refused to train its employees upon the proper methods and means to detect, prevent and treat sexual abuse within East Robertson Elementary. The incidents of abuse were prevalent, involving at least two (2) perpetrators and four (4) victims over a period of at least a year. Notice from DCS that one student, M., had mentioned another, M.B. while undergoing inpatient treatment at Vanderbilt was alone sufficient to alert the plaintiffs of a genuine danger.

51. The defendant's preoccupation with "privacy" over the safety of children and the Assistant Director's description of such behavior as "age appropriate" are indicative of a profound lack of understanding and evidence of a failure to train.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand:

1. That process be issued and the Defendant to answer within the time required by law;

2. The Plaintiffs be awarded such damages as will fully compensate Plaintiffs for all injury caused by the Defendants actions and failure to act as alleged herein;

3. That Plaintiffs be awarded attorney's fees and costs as authorized under 42 USCS § 1988;

4. That Plaintiffs be awarded such additional and general relief to which they may be entitled, at law or in equity.

Respectfully submitted,

**THE BLACKBURN FIRM, PLLC**

/s/ *W. Gary Blackburn* _____
W. Gary Blackburn (#3483)
Melissa Blackburn (#16181)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
Telephone: (615) 254-7770
Facsimile: (866) 895-7272
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 1st day of May, 2013, a true and correct copy of the foregoing has been sent via electronic mail, to the following:

Michael Mills
MILLS & COOPER
5042 Thoroughbred Lane
Brentwood, TN 37027
michaelmills@millscooper.comcastbiz.net
*Attorney for the Defendant*

/s/ *W. Gary Blackburn* _____
W. Gary Blackburn